IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 17–cv–03128–KMT

CAROL D. SCOTT,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER

Plaintiff Carol D. Scott ["Scott"], proceeding *pro se*,[1] brings this action pursuant to the Social Security Act, 42 U.S.C. 405(g), seeking judicial review of a final decision by the Defendant Commissioner of the Social Security Administration ["Commissioner"], denying her applications for disability insurance benefits and supplemental security income. (Doc. Nos. 1, 40.) Plaintiff filed an Opening Brief, and following remand and a second appeal, the Commissioner responded. (["Opening Brief"], Doc. No. 20; ["Response"], Doc. No. 43; *see* Doc. Nos. 32-33, 39.) No additional briefing has been filed, and the time to do so has lapsed. (*See* Doc. No. 41.) The Commissioner has also filed the Administrative Record. (Social

---

[1] Mindful of Plaintiff's *pro se* status, the court "review[s] h[er] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").

Security Administrative Record ["AR"], Doc. Nos. 14, 37.)  After carefully analyzing the briefs and the administrative record, the court AFFIRMS the Commissioner's final decision.

## BACKGROUND[2]

Scott was born on January 3, 1960; she was fifty-five years old on the alleged disability onset date.  (AR 424.)  She has completed post-secondary school training for certification as a nursing assistant ["CNA"].  (AR 608.)  Her employment history includes positions as a nurse's assistant, a stores laborer, and a telephone order clerk.  (AR 608, 949.)

On March 10, 2015, Scott applied for disability insurance benefits, pursuant to Title II of the Social Security Act ["the Act"], and on September 29, 2015, she applied for supplemental security income, pursuant to Title XVI of the Act.[3]  (AR 519-27, 533-38.)  In her applications, Plaintiff claimed that she had been unable to work since January 12, 2015, due to "major depression" and a "limited ability to use hands and arms."  (AR 607.)  The Commissioner denied Plaintiff's applications on July 17, 2015, and again, upon reconsideration, on November 30, 2015.  (AR 470-73, 476-81.)  Plaintiff then successfully requested a hearing before an administrative law judge ["ALJ"], which took place on April 27, 2017.  (AR 44-70, 482-96.)  On June 29, 2017, the ALJ issued a written decision denying benefits, and on September 21, 2017,

---

[2] The following background focuses only on the elements of Plaintiff's history that are relevant to the court's analysis.

[3] Plaintiff previously filed a set of disability applications on November 18, 2008, alleging disability since July 1, 2007.  (*See* AR 410.)  Those applications were ultimately denied in a hearing decision, dated April 13, 2011.  (AR 407-18.)  Plaintiff's request for review by the Appeals Council was denied, and Plaintiff did not pursue judicial review in federal court.  (AR 419-22.)

the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 6-12, 23-38.)

On December 26, 2017, Plaintiff filed a complaint with this court, seeking review of the Commissioner's decision. (Doc. No. 1.) The Commissioner then filed a motion to remand the case, on June 14, 2018, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new evidence that Scott submitted following issuance of the ALJ's decision. (Doc. No. 24; *see* AR 977-80.) That motion was granted, on October 23, 2018, and the case was then remanded to the Commissioner. (Doc. No. 32.)

On remand, the Appeals Council vacated the Commissioner's previous decision, and returned the case to an ALJ for further proceedings consistent with this court's order.[4] (AR 993-97.) A hearing was then held, on March 19, 2019, before ALJ Debra L. Boudreau. (AR 925-54.) Plaintiff appeared and testified at the hearing, without legal representation. (AR 925, 927-28.) The ALJ also heard testimony from a vocational expert. (AR 925, 948-52.) Medical evidence and opinions were provided by three non-examining state agency psychiatric consultants—Eleanor E. Cruise, Ph.D., David Strand, Ph.D., and Mark Suyeishi, Psy.D.; three non-examining state agency physical consultants—Rosemary Greenslade, M.D., James McElhiney, M.D., and Edwin Swann, M.D.; three psychiatric consultative examiners—LeAnna

---

[4] Specifically, the Appeals Council directed the ALJ to: (1) "[c]onsider the new evidence submitted to the Appeals Council and develop the record as warranted;" (2) "[f]urther evaluate the claimant's mental impairments in accordance with" relevant SSA regulations; (3) [g]ive further consideration to the claimant's maximum residual functional capacity [RFC] during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations[;] and (4) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base[.]" (AR 896-97.)

DeAngelo, Ph.D., Carla Duszlak, M.D., and Melisa Obert, Psy.D.; a treating physician, Gregory Unruh, D.O.; an examining nurse practitioner, Dayanara Gohil, PMHNP; an examining physician assistant, Sega Sikod, PA-C; and a social worker, Jennifer Ivan, M.S. (AR 908-13; *see* AR 424-37, 440-69, 727-32, 750-52, 855-71, 1172-73, 1477-84, 2193-2214.)

At the hearing, which was held in Colorado Springs, Colorado, the ALJ first asked Plaintiff about her recent out-of-state travel and present living conditions. (AR 931-34.) Scott reported that she had just visited her sister in North Carolina for a "couple of months," from late November 2018, until early January 2019. (AR 933-34.) She told the ALJ that she had returned to Colorado, primarily because her disability case was "pending in court." (AR 936.) Scott testified that she currently lives in her car, alone, because she "do[es]n't have anywhere [else] to stay." (AR 934.) She affirmed that she has "a reliable place to park" her vehicle, but reported that she does not "feel safe in any of the areas." (AR 938.) Plaintiff told the ALJ that, due to her current living situation, she is unable to regularly bathe. (AR 942.) When the ALJ remarked that Plaintiff appeared "nice and neat and clean," she responded that her "outward appearance" often "throws a lot of people." (AR 942-43.)

The ALJ also questioned Plaintiff regarding her employment status. (AR 938-39, 943-44.) Scott testified that she is unable to work, due to the "intensity" of her "symptoms." (AR 939.) Plaintiff clarified that her "main" problem is "with concentration, and keeping pace with things that [she is] doing." (AR 940.) Plaintiff testified that she is "easily distracted," and "can't remember the path" that she is on. (AR 940-41.) However, Plaintiff admitted that she is able to remember to attend doctors' appointments, to adhere to her prescribed medications, to wash her clothes at the laundromat, as well as to insure and register her vehicle. (AR 939, 941-43.) She

4

reported that she stopped working as a part-time caregiver at a senior living facility, in late 2018, because her "symptoms intensified," and it became "hard" for her to handle "the responsibilities of work," given the "stress" of her current living situation. (AR 943-45.) Plaintiff confirmed that she was presently receiving medical treatment for her conditions, and she reported general satisfaction with her quality of care. (AR 946-48.) She remarked, however, that her healthcare providers "can't give me any medicine that's going to get me off the streets or change the fact that I'm homeless and don't have anywhere to go and stuff." (AR 948.)

On April 26, 2019, the ALJ issued a written decision in accordance with the Commissioner's five-step, sequential evaluation process.[5] (AR 896-915.) The ALJ determined, at step one, that Plaintiff had not engaged in substantial gainful activity since January 12, 2015, the alleged onset date. (AR 899 ¶ 2.) At step two of his analysis, the ALJ found that Scott suffered from four severe impairments: "major depressive disorder, adjustment disorder with anxiety, unspecified neurodevelopmental disorder, and PTSD (post-traumatic stress disorder)."

---

[5] The five-step sequential analysis requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met, or equaled, the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988); *see also McCrea v Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004) (observing that the same five-step sequential analysis applies to eligibility determinations for disability insurance benefits and supplemental security income). It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Id.* at 751 & n.2. The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient residual functional capacity ["RFC"] to perform work in the national economy, given his age, education, and work experience. *Id.* A finding that a claimant is disabled, or not disabled, at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. § 423(d)(1)(A), (2)(A); *see Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

(AR 899 ¶ 3.)  The ALJ also determined that Plaintiff suffered from several non-severe impairments, including hypertension, hyperlipidemia, hypothyroidism, and carpal tunnel syndrome.  (AR 899-900 ¶ 3.)  None of Plaintiff's impairments were found to be presumptively disabling at step three.  (AR 900-02 ¶ 4.)

Prior to reaching step four, the ALJ assessed Scott's residual functional capacity ["RFC"], and found her capable of a full range of work at all exertional levels, subject to the following non-exertional limitations:

> [S]he is able to understand and remember simple routine tasks that can be learned and mastered within 30 days.  The claimant can sustain concentration, persistence, and pace for those simple routine tasks over a typical workday and workweek.  She can interact appropriately with others, can make work decisions, can tolerate occasional task changes of a routine nature, and is able to travel and to recognize and avoid work hazards.

(AR 902 ¶ 5.)

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of pain, the objective medical evidence, and the medical opinion evidence.  (AR 902-14.)  The ALJ determined that, while Scott's impairments could reasonably be expected to cause some of the alleged symptoms, her testimony regarding the intensity, persistence, and limiting effects of her conditions was "not entirely consistent" with the objective medical evidence.  (AR 904.)  The ALJ concluded, in particular, that portions of Scott's testimony were "not consistent with the record."  (AR 908.)  The ALJ likewise concluded that the objective diagnostic evidence and treatment records, though supportive of "some limitations from her mental health impairments," did not reveal any "fully disabling" condition.  (AR 904.)  In addition, the ALJ discussed the medical opinions, giving "little weight" to the opinions from Monique May, M.D. and Sega Sikod, PA-C, because they were rendered for a worker's compensation claim, and revealed only

"temporary restrictions;" "little weight" to the opinion from consultative examiner, Carla Duszlak, M.D., because it was rendered "shortly after [Plaintiff] had started [treatment] at Aspen Pointe, but before she had completed therapy and had her medications adjusted properly;" "partial weight" to the opinions from non-examining state agency mental consultants, Eleanor Cruise, Ph.D. and Mark Suyeishi, Psy.D., because they were rendered "under the prior [SSA] listings," but were otherwise "consistent" with the record; "little weight" to the opinion from non-examining state agency physical consultant, Edwin Swann, M.D., because "the overall record does not support that the claimant has any severe physical impairments;" "great weight" to the opinions from non-examining state agency physical consultants, James McElhinney, M.D. and Rosemary Greenslade, M.D., because they were both "consistent with the overall record;" "little weight" to the opinion from psychiatric examiner, LeAnna DeAngelo, Ph.D., because it was "not consistent" with Plaintiff's reported activities of daily living; "partial weight" to the opinions from Dayanara Gohil PMHNP and Jennifer Ivan, M.S., because they were not "acceptable medical sources," and were "based largely on the claimant's reports;" "little weight" to the opinion from psychiatric consultative examiner, Melisa Obert, Psy.D., because it was "based on self-reports" and "not consistent with the overall record;" and "great weight" to the opinion from non-examining state agency mental consultant, David Strand, Ph.D., which was rendered on March 11, 2019, because it was "supported by and based on the longitudinal medical record of evidence." (AR 908-13.)

At step four, the ALJ determined, based on the vocational expert's testimony, that Scott was unable to perform any past relevant work. (AR 914 ¶ 6.) However, at the final step of her analysis, the ALJ found that "there are jobs that exist in significant numbers in the national

economy that [Scott] can perform," based on her age, education, work experience, and residual functional capacity.  (AR 914 ¶ 10.)  The ALJ determined that Scott would be able to perform such jobs as a housekeeping cleaner, a hospital cleaner, or a hand package.  (AR 915 ¶ 10.)  For that reason, the ALJ concluded that Scott was not under a "disability," as defined by the Act, and denied her applications for disability insurance benefits and supplemental security income.  (AR 915 ¶ 11.)  That denial prompted Scott's renewed request for judicial review.  (Doc. No. 40.)

## STANDARD OF REVIEW

In social security disability cases, the court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards.  *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").  Any conflict in the evidence is to be resolved by the ALJ, and not the court.  *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Scott argues, on her present appeal, that the ALJ "mischaracterized" the administrative record, by "cherry-picking" the objective medical evidence that "support[ed] her decision." (Doc. No. 40 at 4.) Plaintiff likewise complains that the ALJ's decision "downplay[ed] the severity" of her impairments, and "overlook[ed] the indication of symptoms as a source of distress[.]" (*Id.*) Defendant insists, however, that the ALJ properly considered the entire evidentiary record, and followed the applicable law, in determining that Plaintiff is not disabled. (Resp. 5-13.)

It is unquestionably improper for an ALJ to pick and choose among the evidence of record, using portions of evidence favorable to her position, while ignoring other evidence. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (An ALJ need not "discuss every piece of evidence" but "must discuss the uncontroverted evidence he chooses to rely on as well as significantly probative evidence he rejects."). However, the court finds no evidence of such impermissible "cherry-picking" in the ALJ's analysis here.

In her written decision, the ALJ exhaustively reviewed the voluminous evidence of record, including the additional evidence submitted by Plaintiff on appeal. (AR 904-13.) The ALJ also extensively detailed Plaintiff's subjective allegations of pain, as set forth in two function reports, a written statement, and her hearing testimony. (AR 903-04.) The ALJ accurately recounted Plaintiff's treatment records, which showed that her mental health symptoms fluctuated over time, tending to increase with situational stressors. *See Sheppard v.*

9

*Astrue*, 426 F. App'x 608, 610-11 (10th Cir. 2011) (holding that evidence that tended to show a claimant's worsening depression should have been discussed by the ALJ).  In addition, the ALJ discussed Scott's neuropsychological testing results, which revealed a moderate to severe impairment with concentration, memory, and executive functioning.  (AR 907-08.)  The ALJ then gave specific, legitimate reasons for her assessments of Plaintiff's credibility, which were linked to the evidence of record.  *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) ("So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," the determination is supported by substantial evidence.).  In making her credibility determination, the ALJ expressly considered Plaintiff's activities of daily living, which she found to be inconsistent with the level of limitation alleged.  *See Ghini v. Colvin*, 82 F. Supp. 3d 1224, 1234 n.11 ("Although activities of daily living do not necessarily translate to the ability to perform work-related activities on a sustained basis, they do bear on a Plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations."); *accord Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987); *see also Lately v. Colvin*, 560 F. App'x 751, 755 (10th Cir. 2014) (finding no error where the ALJ "cited and discussed inconsistencies between the [claimant]'s testimony and her activities of daily living, child-care responsibilities, diagnostic exams, treatment-seeking behavior, medications, her failure to fully participate in physical and occupational therapy, her consistent work history, and her collection of unemployment benefits").  For instance, the ALJ noted that Plaintiff "worked part-time at the same job until the fall of 2018," and that "during part of this timeframe she was going to culinary school and excelling in this job as well as working at a work-study job with a school district."  (AR 908.)  She also noted that "the record indicated that the claimant reported benefits from her

medications and mindfulness techniques and other coping skills to control her symptoms."  (AR 908.)  The ALJ likewise cited specific, relevant evidence to support her conclusions regarding the amount of weight to assign to each medical source opinion.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave the treating sources' opinions.  Nothing more was required in this case.") (internal citation omitted).

Plaintiff, for her part, cites nothing in the record to explain how the ALJ's conclusions were deficient.  (*See* Doc. No. 40 at 4.)  Nor does she point to any specific evidence that the ALJ did not consider, or that she contends was improperly evaluated.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (noting that "perfunctory complaints" failing "to frame and develop an issue" are not "sufficient to invoke appellate review"); *see also Terwilliger v. Comm'r*, 801 F. App'x 614, 622 (10th Cir. 2020) (unpublished) ("Terwilliger's argument fails to show prejudice, and we will not conjure arguments on his behalf.").

On this record, then, the ALJ properly exercised her responsibility as fact finder to analyze the evidence, and her determination of Plaintiff's RFC is well-grounded in that analysis.  Accordingly, the decision of the Commissioner on this issue must be affirmed.  *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (The Commissioner's final decision "must be affirmed if it is supported by substantial evidence and correct legal standards were used."); *see also Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) ("In reviewing the ALJ's decision, we

neither reweigh the evidence nor substitute our judgment for that of the agency.") (internal quotation marks omitted).

Accordingly, it is

**ORDERED** that the Commissioner's final decision is **AFFIRMED**.

Dated this 13th day of October, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

12